```
        IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

**MONTROSE P. FORD,**

        **Plaintiff,**

  vs.                                 **Civil Action 2:11-CV-1139**
                                          **Judge Sargus**
                                          **Magistrate Judge King**

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

        **Defendant.**

<u>**REPORT AND RECOMMENDATION**</u>

**I.**
**Introduction and Background**

      This is an action instituted under the provisions of 42 U.S.C. §§405(g), 1383 for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 11 and the Commissioner's *Memorandum in Support*, Doc. No. 12.

      Plaintiff Montrose P. Ford filed his applications for benefits on September 16, 2005, alleging that he has been disabled since September 16, 2003, as a result of Guillain-Barré syndrome and "mental" and heart problems. *PAGEID* 196. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

      A hearing was held on November 18, 2010, at which plaintiff, represented by counsel, appeared and testified, as did Richard P. Oestreich, who testified as a vocational expert. In a decision dated January 11, 2011, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *PAGEID* 47-59. That decision became the final decision of the

Commissioner of Social Security when the Appeals Council declined review on June 24, 2011. *PAGEID* 36-39.

Plaintiff was 41 years old on the alleged disability onset date. He has a high school education and past relevant work experience as a grocery store stock person and a security guard.

## II.

### Plaintiff's Testimony

Plaintiff testified at the administrative hearing that he is five foot seven inches in height and weighs 240 pounds. *PAGEID* 71. He last worked on September 16, 2003, as a security guard. *PAGEID* 72. The job ended because he couldn't get along with his supervisor. *PAGEID* 74.  Plaintiff testified that the main cause of his disability is his depression. *PAGEID* 78. He cannot concentrate, experiences mood swings and suicidal ideation, suffers from sleep problems and has difficulty remembering and focusing.  *PAGEID* 78-79.

Plaintiff also experiences fatigue and joint pains in his knees, ankles, hands and shoulders. The pain interferes with his sleep. *PAGEID* 81.

At the time of the hearing, plaintiff was not undergoing any medical treatment nor was he taking any medication, explaining that he lacked insurance. *PAGEID* 81-82.

Plaintiff has no hobbies but he reads and studies the Bible. *PAGEID* 86-87.  He is able to care for his personal needs and he sometimes cooks.  *PAGEID* 85.  He sometimes "venture[s] out" to church. *PAGEID* 88. He has one or two friends who visit. *PAGEID* 89.

## III.

### The Medical Evidence of Record.

Plaintiff presented to an emergency room on September 16, 2003 with the chief complaint of chest pain after getting "very upset and angry at work." *PAGEID* 255-58. Plaintiff described a pain in the left lateral aspect of his chest, a sharp, razor blade type sensation under his left breast and into his left side.  He also complained of severe

shortness of breath and dizziness. Cardiovascular examination showed a regular rate and rhythm and no murmur, rub or gallop. There was no cyanosis, clubbing or edema;  there was full range of motion and normal strength and tone. Neurologically, plaintiff was found to be alert and oriented x3;  there were no motor or sensory deficits. Plaintiff was discharged with diagnoses of chest pain, rule out myocardial infarction; dyspnea; and anxiety. *Id.*

Manmohan Katapadi, M.D., a cardiologist, treated plaintiff from October 15, 2003 to April 19, 2005. *PAGEID* 275-89. On January 15, 2004, Dr. Katapadi reported that plaintiff had a positive stress EKG, but a negative scan. *PAGEID* 282. A repeat stress echocardiogram was negative for ischemia and Dr. Katapadi commented that plaintiff may not need further work up for coronary artery disease. *PAGEID* 281.  In July 2004, Dr. Katapadi noted a normal S2 and S2 and no S3 or S4 and diagnosed borderline hypertension.  *PAGEID* 281. *See also PAGEID* 302.

Plaintiff was treated at the Family Health Center by Pureza Jacaban, M.D., from May 28, 2004 through October 3, 2008. *PAGEID* 422-37. It was noted that plaintiff is non-compliant at times;  he tends to "show up in crisis so he is always referred to Netcare." *PAGEID* 424.

In December 2003, psychiatrist Edmond Goold, M.D., diagnosed post-traumatic stress disorder and assigned a current Global Assessment of Functioning ("GAF") score of 60, with the highest GAF in the past year at 75. *PAGEID* 334.  In January 2004, Dr. Goold indicated that plaintiff was "doing well" on Lexapro. *PAGEID* 332.

Plaintiff presented to an emergency room in April 2005, complaining that he was "[a]fraid for his life." *PAGEID* 259-66. The emergency room physician noted that plaintiff was suffering from "paranoid delusional thinking." *PAGEID* 259. Plaintiff was emotionally labile and tearful. *PAGEID* 260. Toxicology screening documented the presence of cocaine and cannabinoids. Plaintiff was diagnosed with an acute psychotic episode with a history of depression

3

and anxiety. The emergency room physician worried that plaintiff "may represent a significant risk of harm to himself and perhaps others . . . [and] that the patient warrants psychiatric hospitalization for further evaluation and stabilization." *PAGEID* 260.

Plaintiff again presented to the emergency department later that month complaining of "hallucinations commanding him to harm himself;" he denied suicidal or homicidal intent, however. *PAGEID* 261-62. The emergency room physician was unclear whether plaintiff was taking prescribed medication. *PAGEID* 261. Plaintiff again tested positive for cannabinoids. Discharge diagnoses were suicidal ideation and schizoaffective disorder. *PAGEID* 262.

On December 8, 2005, R.A. Lewis, Ph.D., performed a consultative examination at the request of the state agency. *PAGEID* 337-39. Plaintiff reported depression and anxiety. He had received no treatment since April 2005; he discontinued his psychiatric medication against medical advice. *PAGEID* 337. Plaintiff admitted using street drugs, including marijuana and cocaine. *PAGEID* 338. There was no evidence of delusions, hallucinations, obsessions, compulsions or feelings of derealization or depersonalization. *Id.* Plaintiff reported a low mood and low self esteem with feelings of hopelessness and helplessness. Dr. Lewis found no evidence of a thought disorder and noted that plaintiff's associations were intact. *Id.* According to Dr. Lewis, plaintiff's insight was fair, his intellectual functioning was average, his responses to general informational questions were normal, and plaintiff reported no suicidal or homicidal intent. *Id.* Judgment and attention were not within normal limits. *Id.* Dr. Lewis diagnosed dysthymic disorder and marijuana and cocaine abuse in early remission. *PAGEID* 339. He assigned a GAF score of 45. *Id.* According to Dr. Lewis, plaintiff was moderately impaired in his ability to relate to others, to understand and follow instructions, to withstand the stress and pressures associated with day-to-day work activity, to sustain concentration

and persistence, to interact and relate to other workers and in his ability to adapt. *Id.* Plaintiff was only mildly limited in his ability to perform simple repetitive tasks. *Id.*

State agency psychologist Todd Finnerty, Psy.D., reviewed the record in January 2006 and concluded that plaintiff had only mild restrictions in his activities of daily living, moderate difficulty in maintaining social functioning concentration, persistence, or pace and no extended episodes of decompensation. *PAGEID* 363. According to Dr. Finnerty, plaintiff retained the ability to perform simple and routine activities, to carry out tasks in situations where his duties are relatively static and changes are explained and to perform tasks that do not require independent prioritization or more than daily planning and in an environment that allows for limited interaction with others. *PAGEID* 351. Dr. Finnerty concluded that plaintiff was only partially credible because his subjective allegations of mental limitations are not supported by the objective medical evidence. *Id.*

In March 2008, plaintiff was psychiatrically hospitalized for ten days under the care of Hossam H. Guirgis, M.D., for suicidal ideation and increased depression. *PAGEID* 367-74. Plaintiff reported that he had run out of his medication several days prior to the hospitalization. *PAGEID* 367. He also complained that he was nervous, had been unable to sleep and could not concentrate or focus. *Id.* A toxicology screening was positive for alcohol, cannabinoids and cocaine. *Id.* Medications were managed to accommodate a mixed/manic state, and plaintiff's mood was stabilized. *PAGEID* 369. Discharge diagnoses were bipolar affective disorder, not otherwise specified, as well as alcohol and marijuana abuse. Dr. Guirgis assigned GAF scores of 5 on admission and 45 on discharge.  *Id.*

In August 2008, plaintiff was hospitalized for three days with complaints of homicidal ideation. *PAGEID* 376-419. Discharge diagnosis was major depressive disorder, severe with psychosis; he

was assigned a GAF score of 40. *PAGEID* 376. It was noted that plaintiff had poor medication compliance. *PAGEID* 389.

In October 2008, state agency psychologist Alice Chambly, Psy.D., reviewed the file but concluded that there was insufficient information to evaluate the severity of plaintiff's conditions because plaintiff had not provided function and daily activities reports. Efforts to obtain the information from plaintiff or his counsel received no response. *PAGEID* 438-50.

In November 2008, Pureza Jacaban, M.D., who has treated plaintiff for both physical and mental impairments, reported to the state agency that plaintiff suffers from depression, for which plaintiff was referred to a mental health agency. *PAGEID* 424. In April 2009, Dr. Jacaban's office again reported to the state agency that plaintiff is "severely depressed and non-com[pliant]." *PAGEID* 453. The report referred the state agency to plaintiff's treating mental health professionals for treatment notes, but included the comment, "[T]his patient should not work anywhere!" *PAGEID* 456 (emphasis in original).

A February 2009 MRI of the lumbar spine, for complaints of back pain and numbness, showed degenerative changes with lateral disc-osteophyte complexes toward the right causing narrowing of the neural foramina, predominantly at L3-4 and L4-5. *PAGEID* 566.

Plaintiff began mental health treatment at North Central Mental Health Services in April 2009. *PAGEID* 537-41, 542-63. The initial evaluation by a social worker noted a dysphoric mood and flat affect. *PAGEID* 539. Plaintiff was cooperative but almost sedated. According to the social worker, plaintiff's insight was limited and he exhibited a high-moderate impairment in functioning due to psychiatric symptoms. *PAGEID* 540. Initial diagnoses were major depression, recurrent, with psychotic features; rule out schizoaffective disorder, depressive type. Plaintiff was assigned a GAF score of 51. *Id.*

Plaintiff was seen in an emergency room in June 2009 complaining of chest pain. *PAGEID* 515-24. A chest x-ray was normal. *PAGEID* 520. He was discharged with a diagnoses of atypical chest pain. *Id.*

On July 13, 2009, plaintiff was seen in the emergency room for complaints of depression and suicidal ideation that included a "plan." *PAGEID* 508-14. He reported that he had run out of his medication, Lexapro. *PAGEID* 510. The emergency room physician noted that plaintiff's mood, affect, mentation and manner were appropriate. There was no apparent risk to either himself or others. Plaintiff showed no evidence of hallucinations or other psychotic thoughts. The attending physician noted that plaintiff "is not suicidal but is depressed. It sounds as if this depression has been a long-standing diagnosis for the patient." *PAGEID* 511.

Plaintiff presented to the emergency room again on July 26, 2009, complaining of shortness of breath and chest pain. *PAGEID* 526. His EKG and x-ray were both normal. *PAGEID* 527. He was discharged with a diagnosis of atypical chest pain. *Id.*

Plaintiff's mental health treatment by North Central was terminated in May 2010 because he failed to participate in his treatment. *PAGEID* 562.

## IV.

### Administrative Decision

In his decision, the administrative law judge found that plaintiff's severe impairments consist of degenerative disk disease, covertebral arthritis, degenerative joint disease of the spine, post-traumatic stress disorder, depression, schizoaffective disorder, bipolar disorder, narcissistic personality disorder and a history of poly-substance abuse. *PAGEID* 49. The administrative law judge expressly excluded Guillain-Barré syndrome, hypertension and cardiac condition as severe impairments, finding that those conditions do not cause more than minimal limitations in plaintiff's

ability to perform basic work activities or, in the case of plaintiff's claimed cardiac condition, was not supported by the objective medical evidence. *PAGEID* 49-50.

The administrative law judge went on to find that plaintiff's impairments neither met nor equaled a listed impairment. *PAGEID* 51-52.

The administrative law judge found that plaintiff has the residual functional capacity to perform medium work, except that plaintiff would be limited to work that involves only simple, routine, repetitive activities; to carrying out tasks in situations where his duties are relatively static and changes are explained to him; to those tasks which will not require independent prioritization or more than daily planning; and to work that would permit plaintiff to function in an environment that allows for limited interaction with others. *PAGEID* 53.

Although this residual functional capacity would preclude the performance of plaintiff's past employment, the administrative law relied on the testimony of the vocational expert to find that plaintiff is able perform other work that exists in significant numbers in the national economy. *PAGEID* 58-59. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. *PAGEID* 59.

## V.

## DISCUSSION

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In his *Statement of Errors*, plaintiff argues the administrative law judge should have included plaintiff's heart disorder in his severe impairments. *Id.* at PAGEID 580. Plaintiff also argues that the administrative law judge should not have relied on the 2006 opinion of the state agency psychologist, Dr. Finnerty, in formulating plaintiff's residual functional capacity but instead should have given more weight to the assessments of other mental health professionals, as reflected in their GAF scores. In this regard, plaintiff specifically contends that the GAF scores "function[ed] as opinions as to the severity of Mr. Ford's impairments and the limitations that derive from those impairments." *Statement of Errors*, PAGEID 577. Alternatively, plaintiff contends, the administrative law judge should have secured the testimony of a medical expert. *Id.*

This court concludes that the administrative law judge did not err in failing to include plaintiff's claimed cardiac condition among plaintiff's severe impairments. Dr. Katapadi, plaintiff's cardiologist, reported that, following essentially negative findings, there was no need for further testing for coronary artery

9

disease.  *PAGEID* 281.  He diagnosed only borderline hypertension. *Id.*

This Court does conclude, however, that the matter must be remanded to the Commissioner for further consideration of plaintiff's mental impairments.  In reaching his decision regarding plaintiff's mental residual functional capacity assessment, the administrative law judge relied on the January 2006 assessment of the state agency psychologist:

> The undersigned gives great weight to the State agency psychological consultant mental residual functional capacity assessment.  The record greatly supports this assessment in that there is nothing in the record that contradicts the assessment.  Further, the assessment takes into account the claimant's allegations as to his aversion to those other than his family, his alleged mood swings, and his difficulties in remembering, concentrating and focusing.

*PAGEID* 57. The administrative law judge rejected the opinion of disability articulated by Dr. Jacaban because that treating provider offered no descriptions of plaintiff's actual mental impairments and because the ultimate conclusion as to disability is a determination for the Commissioner.  *Id.*  The administrative law judge provided no express evaluation of the reports or findings of other treating mental health providers, such as Dr. Guirgis, who in 2008 and 2009 assigned extremely low GAF scores to plaintiff.[1]  The administrative law judge also noted references in the record to plaintiff's non-compliance with treatment directives, although only in connection with the assessment of plaintiff's credibility.

The state agency psychologist upon whose assessment the administrative law judge relied who did not have the benefit of the substantial evidence generated after the date of that assessment. Although the Commissioner, in his *Memorandum in Opposition*, relies heavily on plaintiff's apparent failure to provide additional

---

[1] The administrative law judge did mention, in passing, that he considered plaintiff's GAF scores when assessing his residual functional capacity, but that

10

information regarding his functioning and daily activities, *Memorandum in Opposition, PAGEID* 591, it does not appear that the administrative law judge relied on this failure in resolving plaintiff's claim.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that this action be remanded to the Commissioner of Social Security for further consideration of plaintiff's mental impairments.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: January 30, 2013                    *s/Norah McCann King*
                                          Norah McCann King
                                          United States Magistrate Judge

---

GAF scores are "of very little value in determining disability." PAGEID 54-55.